# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALICE GILLE, as Proposed Administrator of the Estate of Nicholas Papandreou; LOUIS J. GAROFOLO, as Proposed Administrator of the Estate of Louis A. Garofolo; LAURA G. BUNZEL and VALERIE J. CONNELLY, as Proposed Executors of the Estate of Vincent J. Vallario; for themselves and on behalf of all others similarly situated,<br><br><br><br>Plaintiff(s),<br><br>-against-<br><br>THE STATE OF NEW YORK; STATE UNIVERSITY OF NEW YORK; STONY BROOK UNIVERSITY; LONG ISLAND STATE VETERANS HOME; NEW YORK STATE DEPARTMENT OF HEALTH,<br><br>Defendant(s) | **CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND**<br><br><br>**Civil Action No: 22-2974** |

Plaintiffs, by their attorneys, Napoli & Shkolnik PLLC, as and for their class action complaint against Defendants, respectfully state, allege and pray as follows:

## NATURE OF THE CASE

1.     "*As we express our gratitude, we must never forget the highest appreciation is not to utter words, but to live by them*".[1]  Suffolk County is home to the largest population of veterans in New York State and has one of the largest veteran populations of any other county in the United States of America.[2]  The Long Island State Veterans Home was established with the stated mission and commitment of caring responsibly for the well-being of our state's veterans, with dignity and

---

[1] John F. Kennedy.
[2] See, https://www.suffolkcountyny.gov/Veterans.

compassion, just as they had committed themselves during their selfless service to the nation in times of conflict and war.

2.      However, far from it, because of defendants' deliberate indifference, palpable through their actions and glaring omissions, the Long Island State Veterans Home (herein referred to also as, "Veterans' Home") became an infection hotspot for its veterans/residents who were unnecessarily exposed to, and infected with, the deadly SARS-CoV-2 virus (commonly known as "COVID-19"), and ultimately a death trap for 124 of our nation's veterans.[3]  In total, close to 486 veterans/residents and staff tested positive for COVID-19 at the Veterans' Home.

3.      This is a class action suit brought by the Proposed Administrators and Executors of the respective Estates of Nicholas Papandreou, Louis A. Garofolo, and Vincent J. Vallario - veterans who died because of a preventable COVID-19 outbreak at the Long Island State Veterans Home  – on behalf of themselves, in their own right, and on behalf of all other similarly situated veterans/residents and/or their respective estates, who also contracted the deadly virus while residing at the Veterans' Home and suffered injury from COVID-19-related infection and illness, including death.

4.      This class action is brought because defendants, acting under color of state law, patently and grossly failed to be stewards of the well-being of our nation's and state's veterans, and failed to timely act to protect their veterans/residents from exposure to a deadly COVID-19 outbreak in their facility, depriving the named Plaintiffs and others similarly situated of their civil rights  secured by federal law and protected by the Fourteenth Amendment of the Constitution of the United States of America.

---

[3] As of May 15, 2022, per data published by the New York Department of Health.

5.      Plaintiffs also bring forth state law claims, pursuant to this Court's supplemental jurisdiction.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331, based on 42 U.S.C. §1983, and questions of federal constitutional law.

7.      This Court has supplemental jurisdiction over Plaintiffs' state law claims, pursuant to 28 U.S.C. §1367.

8.      Venue is proper in the U.S. District Court for the Eastern District of New York pursuant to 28 U.S.C. §1391(b) because a substantial part of the events, actions, and omissions giving rise to the claims herein occurred in this district.

## THE PARTIES

**I.      Named Plaintiffs**

9.      Plaintiff, **Alice Gille**, is the Proposed Administrator of the Estate of her father, **Nicholas Papandreou**, and a resident of the State of New York.  Nicholas Papandreou was a resident at the Veterans' Home when he was exposed and infected with COVID-19.   On May 3, 2020, Nicholas Papandreou passed away because of complications from COVID-19.

10.      Plaintiff, **Louis J. Garofolo**, is the Proposed Administrator  of the Estate of his brother, **Louis A. Garofolo**, and a resident of the State of New York.  Louis A. Garofolo was a resident at the Veterans' Home when he was exposed and infected with COVID-19.  On December 23, 2020, Louis A. Garofolo passed away because of complications from COVID-19.

11.      Plaintiffs, **Laura G. Bonzel** and **Valerie J. Connelly**, are the Proposed Executors of the Estate of their father, Vincent J. Vallario, and residents of the State of New York.   Vincent J. Vallario was a resident at the Veterans' Home when he was exposed and infected with COVID-

19.   On January 24, 2021, Vincent J. Vallario passed away because of complications from COVID-19.

## II.    The Proposed Class

12.   The above-named Plaintiffs, pursuant to Rule 23 of the Federal Rules of Civil Procedure, seek to certify a class of similarly situated individuals, and/or the estates of these individuals, who contracted COVID-19 while they were residents at the Long Island State Veterans Home between March 1, 2020 through the present, and who experienced conscious pain, suffering, injury, and/or death as a result thereof (the "Class").

13.   Certification of the proposed class would be appropriate because:

a.   *The Class is so numerous that joinder of all members is impracticable.*  From March 1, 2020, through the present, at least 124 veterans who contracted COVID-19 at the Veterans' Home died because of it; and at least an additional 365 veterans contracted COVID-19 during that same period.

b.   *There are questions of law and fact which are common to members of the Class, and which predominate over questions affecting any individual class member.*  The common questions include, inter alia, the following:

i.   Whether the lack of safety and/or preventative measures taken in the wake of the COVID-19 outbreak and pandemic caused the putative Plaintiff(s) to be unnecessarily exposed, causing them to suffer needlessly and/or die.

ii.   Whether the actions or inactions of the Defendants, which precipitated and/or caused these safety measure lapses, were abnormally dangerous and/or in wanton, willful or reckless disregard of the safety and interests of the members of the Class.

iii.   Whether the actions and/or inactions of the Defendants, regarding their failure to establish and maintain proper infection prevention and control protocols and policies, were negligent and caused damages to the members of the Class.

iv.   Whether members of the Class sustained damages because of the Defendants' failures to have proper infection prevention and control protocols and policies in place, and to properly abide by them.

4

    v.   Whether the Defendants were negligent by delaying their compliance with the guidance and recommendations issued by the NYSDOH and CMS, regarding, among other matter, the proper screening of employees, staff, and visitors, upon arriving to the facility;

    vi.   Whether the damages sustained by members of the Class were foreseeable by the Defendants, given the widespread news of injury and death in the wake of the COVID-19 outbreak and pandemic in the United States and beyond, and given their lack of preparedness and their failure to take proper measures to ensure their veterans/residents' safety at the facility.

    vii.   Whether the conduct of the Defendants was reckless and/or grossly negligent; and

    viii.   Whether the Defendants are liable to the Class for punitive damages.

c.   *The claims of the representative parties are typical of the claims of the Class.* The named Plaintiffs assert claims typical of those of the individual members of the proposed Class, based on Defendants' violations of their federally protected civil rights, violations of state public health laws, negligence, gross negligence, conscious pain and suffering, and wrongful death. Plaintiffs' interests are not antagonistic to, or in conflict with, the Class as a whole. Moreover, Plaintiffs and the members of the Class suffered damages in the same or similar ways because of the Defendants' actions and/or inactions. In addition, Plaintiffs and the members of the Class are relying on the same legal theories and causes of action.

d.   *The named Plaintiffs will fairly and adequately protect and represent the interests of each member of the Class.* Among other things, Plaintiffs have suffered the same or similar harm as the other members of the Class and will zealously pursue their claims against the Defendants. In addition, counsel for Plaintiffs, Napoli Shkolnik, PLLC and Joseph L. Ciaccio is amply qualified to represent the interests of the Class. Counsel is a respected member of their legal community, who has engaged in complex civil litigation in the States New York, in Federal Court, and across the Country for many years, including medical malpractice, nursing home, mass tort, pharmaceutical and class action case(s).

e.   *A class action is the superior method for adjudicating the controversy.* First, the thousands of dollars that would be required to litigate each of their cases on an individual basis make it unlikely that members of the Class will seek redress for the wrongful conduct alleged. Moreover, it is desirable to concentrate the litigation in a single forum since the disposition of Class members' claims in a class action will provide substantial benefits to both the parties and the Court, and denial of class certification may result in a multitude

of individual suits, with the potential for incongruity of adjudication and results.

    f.   *Finally, no unusual difficulties are likely to be encountered in the management of their class action, as it is straight forward.* The proceedings can be structured to simplify the initial trial on common issues. In addition, the Court has flexibility to manage special claims through the creation of a subclass or subclasses and through deferral of individual claims to subsequent claims proceedings.

## III.    Defendants

14.    Defendant, **State of New York** (also referred to herein as, the "State"), is a state of the United States of America and the legal and political entity with plenary responsibility over the different state government departments, agencies, and/or entities that provide public services to the citizens of New York state, including health services.

15.    Defendant, **State University of New York** (also referred to herein as, "SUNY"), is a system of 64 public colleges and universities in New York State, that is supported, owned, and operated by the State.

16.    Defendant, **Stony Brook University** (also referred to herein as, "SBU"), is a public research facility supported, owned, and operated by SUNY and the State of New York.

17.    Defendant, **Long Island State Veterans Home**, upon information and belief, is a municipal corporation existing under the laws of the State of New York, located at 100 Patriots Road, Stony Brook, New York 11790.   Based upon information and belief, the Long Island State Veterans Home is owned and operated by the defendant State of New York, through defendants SUNY and SBU.

18.    Defendant, **New York State Department of Health** (also referred to herein as, "NYSDOH"), is a department of the government of the State of New York responsible for

overseeing nursing homes, long-term care facilities, and hospitals, and for ensuring their compliance with federal and state regulations, including infection control requirements.

19.    During this complaint, the term "Defendants" will refer to these 5 defendants collectively.

## STATEMENT OF FACTS

### I.    Facts Common to All Causes of Action

#### A.    The Long Island State Veterans Home

20.    The Long Island State Veterans Home is a 350-bed skilled nursing facility that provides healthcare and other medical services to veterans of the United States Armed Forces. The Veterans' Home also administers an adult day health care program for an additional 50 veterans and/or their spouses.

21.    The Long Island State Veterans Home is part of Stony Brook University. It is owned and operated by the State of New York through the State University of New York.

22.    The Long Island State Veterans Home is overseen by the New York State Department of Health.

23.    At all times relevant to this complaint, the Long Island State Veterans Home is a nursing home facility that held itself out to the public as a facility providing such care and accommodations where our state's veterans could be treated by competent and skilled physicians and nursing staff.

24.    At all times relevant to this complaint, the Long Island State Veterans Home claimed to provide for the proper care and safety of the veterans who were residents at their nursing home facility, and claimed to provide personnel, including doctors, nurses, attendants, assistance, non-

medical personnel, and others for the proper, safety, and good treatment of its veteran/residents, and held itself out to the public as furnishing treatment facilities where our state's veterans could be provided with proper care and safety.

25.    At all times relevant to this complaint, the Long Island State Veterans Home was and still is a participant in Medicare and Medicaid.

26.    At all times relevant to this complaint, the Long Island State Veterans Home was a facility subject to the provisions of Public Health Law Section 42 Code of Federal Regulations Parts 483, setting Medicare and Medicaid Requirements for long term facilities ("OBRA" regulations), as effective October 1, 1990

27.    At all times relevant to this complaint, to participate in Medicare and Medicaid programs, the Long Island State Veterans Home was required to comply with the Federal requirements for long-term care, as prescribed in the U.S. Code of Federal Regulations, 42 C.F.R. §483.

28.    Per 42 C.F.R. §483, a nursing home facility, such as the Long Island State Veterans Home, should have sufficient nursing staff to provide nursing and related services to attain and maintain the highest practicable physical, mental, and psycho-social well-being of each resident (§483.30); must ensure that the resident's environment remains free of accident and hazards (§483.25(h)(1)); must prevent the deterioration of a resident's ability to bathe, dress, groom, transfer and ambulate, toilet, eat, and to use speech, language or other functional communication systems (§483.25); must care for its residents in a manner and in an environment that promotes maintenance or enhancement of each resident's quality of life (§483.15); must promote care for residents in a manner and in an environment that maintains or enhances each resident's dignity and respect in full recognition of his or her individuality (§483.15); among many other

responsibilities and obligations.

29.    At all times relevant to this complaint, the Long Island State Veterans Home was a facility subject to the-provisions of Public Health Law Section 42 U.S.C. Section 1395(i) et seq.

30.    At all times relevant to this complaint, the Long Island State Veterans Home was a facility subject to the provisions of Public Health Law Section 1396(r) (1990) et seq. as amended by the Omnibus Budget Reconciliation Act of 1987 (OBRA Regulations).

31.    Per 42 U.S.C. §1396r(b)(1)(A), a nursing home must care for its residents in such a manner and in such an environment as will promote maintenance or enhancement of the quality of life of each resident.

B.    <u>COVID-19 State and Federal Guidance to Nursing Home Facilities</u>

32.    SARS-CoV-2 is known and documented to cause a debilitating and deadly disease, the Coronavirus disease 2019 (also referred to herein as, "COVID-19").

33.    COVID-19 can and has spread rapidly in long-term residential care facilities, and persons with chronic underlying medical conditions are at greater risk for COVID-19.

34.    The first case of COVID-19 in the United States was confirmed on January 21, 2020, in Washington State.  **See Exhibit A, Report, at p. 7**.

35.    On February 28, 2020, several cases of COVID-19 among staff and residents were identified in a long-term care skilled nursing facility in King County, Washington State.  This was presumably the first recorded cases of the deadly virus at a nursing home facility.  The infected resident died three days later, on March 2, 2020. **See Exhibit A, Report, at p. 7**.

36.     On March 1, 2020, the first confirmed COVID-19 case in the State of New York was reported. **See Exhibit A, Report, at p. 7**.

37.    On March 3, 2020, the first presumed COVID-19-related death occurred at a nursing

home in the State of New York.  **See Exhibit A, Report, at p. 39**.

38.    On March 4, 2020, the Centers for Medicare and Medicaid Services ("CMS") issued its *Guidance for Infection Control and Prevention of Coronavirus Disease 2019 (COVID-19) in Nursing Homes*, recommending suspension and limitation of standard nursing home activities, and the screening of visitors and staff at nursing homes for signs and symptoms of a respiratory infection, such as fever, cough, and sore throat.  **See Exhibit B, CMS Guidance QSO-20-14-NH dated March 4, 2020**.

39.    Other CMS recommendations included: increasing the availability and accessibility of alcohol-based hand sanitizers, tissues, no touch receptacles for disposal, and facemasks at the facility's entrances, waiting rooms, patient check-ins, etc.; increasing signage for vigilant infection prevention, such as hand hygiene and cough etiquette; properly cleaning, disinfecting, and limiting sharing of medical equipment between residents and areas of the facility; and providing additional work supplies to avoid sharing among staff and residents (i.e., pens, pads), and properly disinfecting workplace areas (such as nurses' stations, phones, internal radios, etc.).  **See Exhibit B, CMS Guidance QSO-20-14-NH dated March 4, 2020**

40.    On March 6, 2020, the NYSDOH issued guidance DAL NH-20-04, addressed to nursing homes, regarding the precautions and procedures these facilities should take to protect and maintain the health and safety of their residents and staff during the COVID-19 pandemic outbreak.  This guidance also recommended screening nursing home staff and employees for symptoms of illness upon arriving at work, such as fever, lower respiratory infection, shortness of breath, cough, nasal congestion, runny nose, sore throat, nausea, vomiting and/or diarrhea. **See Exhibit C, NYSDOH Guidance DAL NH-20-04  dated March 6, 2020**.

41.    On March 7, 2020, the then Governor of New York, Andrew M. Cuomo, declared a

state of emergency over the COVID-19 outbreak as cases in the state continued to rise. **See Exhibit A, Report, at p. 39**.

42. On or before March 10, 2020, the first COVID-19 community transmission cases were identified in Suffolk County.

C. COVID-19 Timeline at the Veterans' Home

43. On March 13, 2020, nine days after CMS' guidance recommending employee and visitor screenings at nursing homes, and one week after the NYSDOH's guidance issuing the same recommendation, the Veterans' Home announced that it would begin screening all employees as they reported to work.

44. On March 21, 2020, the Veterans' Home announced it would now begin restricting all students, companions, and hospice aides from their facility.

45. On March 24, 2020, the Veterans' Home reported its first confirmed COVID-19 case of a resident/veteran at their facility.

46. Three days later, on March 27, 2020, the Veterans' Home causally communicated it had an employee test positive for COVID-19, but without informing when did the employee test positive for COVID-19, nor since when did the nursing home knew about it.

47. On April 3, 2020, the Veterans' Home announced the first COVID-19-related deaths of two U.S. veterans residing at their facility.

48. On April 8, 2020, the Veterans' Home announced it had at least 40 COVID-19 positive cases at their facility; that seven veterans had passed away from COVID-19; and that fourteen employees had tested positive for the virus.

49. On April 14, 2020, the Veterans' Home announced that 52 of their veteran/residents had tested positive for COVID-19, and that 24 veterans had passed away from the deadly virus

11

since March 10, 2020.  They also informed that 34 of its employees were positive for COVID-19, and that 53 employees had recovered from the illness and returned to work.

50.    On April 21, 2020, the Veterans' Home announced they had tested 114 employees for COVID-19 up to that point, and that a whopping 53 of them, i.e. 46%, had tested positive for the virus.

51.    By May 31, 2020, the Long Island State Veterans Home had experienced the second-highest death rate among all 615[4] nursing homes in the State of New York.

52.    On March 4, 2021, a report issued by the Empire Center for Public Policy[5] highlighted that the resident death totals at the Veterans' Home, which stood at 121 veterans on February 9, 2021, was still the second highest in the State of New York with only a private nursing home from Erie County surpassing their death count.[6]

53.    Per the report, 34.7% of the veterans/residents at the Long Island Veterans Home had died from COVID-19, which constituted the 12th highest total in the State.

54.    In fact, according to the data published in the above-mentioned report, "[t]he ownership sub-group with the worst [COVID-19] mortality rate was the seven facilities owned and operated by the state government—five of which are designated for veterans".

55.    As of February 9, 2021, these "seven [state-owned veteran] homes [had] lost 291 residents, or 18.4 percent of their pre-pandemic population, which was five points higher than the statewide average".[7]  Of those 291 veterans' deaths, 42% of them occurred at just one veterans

---

[4] Per NYSDOH data.
[5] The Empire Center for Public Policy is an independent, non-partisan, and non-profit think tank located in Albany, New York. Their report can be accessed here: https://www.empirecenter.org/publications/implications-of-covid-19-mortality-patterns/.
[6] Id. Per the report, Harris Hill nursing home in Erie County had reported 138 deaths at their facility as of February 9, 2021.
[7] Id.

home: the Long Island State Veterans Home.

56.     Meanwhile, as our nation's veterans were facing these challenges at the state-owned nursing homes, the New York State's Division of Veterans' Services remained without a director for almost two years, until November 2021, when current Governor Kathy Hochul filled the vacancy.

      D.    <u>Failed Preparation and Response from the Veterans' Home at Long Island</u>

57.     Prior to and at all times hereinafter mentioned, Defendants owed a duty to the named Plaintiffs and to the members of the Class, to have adequate staffing so that such staff, employees and independent contractors delivered care and services to these veterans/residents in a reasonably safe and beneficial manner, in accordance with their stated mission.

58.     Since at least January 21, 2020, Defendants were made aware of the severe acute respiratory syndrome known as COVID-19 spreading world-wide and nationally, and that it caused severe medical distress and/or death in individuals who caught the disease, especially, the elderly.

59.     Prior to the beginning of the COVID-19 pandemic in February/March 2020, Defendants failed to take the proper steps to protect the veterns/residents at their facility from foreseeable events and outbreaks, such as COVID-19.

60.     Prior to the beginning of the COVID-19 pandemic in February/March 2020, defendants failed to have proper policies and procedures in place, and to take steps to have preparations in place, such as proper staffing levels, proper infectious disease policies and procedures, proper available personal protective equipment ("PPE"), and other such steps which would have mitigated or completely avoided its effects.

61.     At all relevant times, Defendants, through their administrators, agents, officials, and employees, were responsible for overseeing the day-to-day operations at the Long Island State

Veterans Home and had a responsibility to monitor the recommendations and guidelines issued by CMS and the NYSDOH, and adhere by them to the extent that such action would benefit their veterans/residents and protect them from unnecessary harm

62.    Defendants failed to timely monitor local, state, and federal health guidance on the coronavirus for maintaining the safety of its residents.

63.    For example, despite clear guidance to monitor healthcare staff at nursing homes and long term-care facilities, the Veterans' Home did not begin screening their staff and employees until around March 13, 2020, at least one week <u>after</u> CMS and NYSDOH's recommendations (see, ¶¶38-40).

64.    For at least <u>nine days after</u> CMS' recommendations, the employees and staff at the Veterans' Home remained unscreened and allowed to interact with the veteran/residents, exposing them unnecessarily to COVID-19 infection.

65.    Furthermore, it wasn't until March 21, 2020, that the Veterans' Home began restricting all students, companions, and hospice aides from their facility, despite them knowing that their  veteran/residents' were considered a very high-risk population, with some of them suffering from comorbidities and immunocompromised conditions.

66.    Defendants also failed to appropriately separate residents in accordance with local, state, and federal guidance, and failed to quarantine or isolate early COVID-19 positive residents at their facility, allowing them to move around without donning proper personal protective equipment (PPE).

67.    Defendants failed to timely enforce social distancing among residents.

68.    Defendants failed to timely enforce social distancing among staff.

69.    Defendants failed to timely isolate

70.    Defendants failed to timely cancel all group activities and communal dining.

71.    Defendants failed to timely restrict all visitors.

72.    Defendants failed to ensure all residence wear a cloth face covering.

73.    Defendants failed to ensure appropriate staffing levels.

74.    Defendants failed to ensure all health care professionals were provided a facemask or cloth covering while in the facility.

75.    Defendants failed to properly clean, sanitize and disinfect medical equipment and failed to limit sharing of these between residents and areas of its facility.

76.    Defendants failed to properly clean, sanitize and disinfect office materials, and failed to limit sharing of these between their staff and areas of its facility.

77.    Defendants failed to adequately screen employees, staff, volunteers, and non-essential healthcare personnel prior to allowing their entrance into the facility.

78.    Defendants failed to timely and actively screen everyone entering the building for fever and symptoms of COVID-19.

79.    Prior to the COVID-19 pandemic, Defendants failed to have the appropriate policies, procedures, staffing and otherwise failed to be prepared for a foreseeable event such as an infectious disease exposure and outbreak.

80.    After the COVID-19 pandemic begun and throughout the time periods referenced herein, the Defendants failed to properly respond to the pandemic.

81.    As a direct and foreseeable consequence of the Defendants' acts, omissions, and failures in taking safety precautions during the COVID-19 pandemic, the named U.S. veteran Plaintiffs herein, along with other similarly situated individuals and/or their respective estates, sustained loss, damages, injury, and/or death.

E.    Nicholas Papandreou, a U.S. veteran who contracted COVID-19 at the Long Island State Veterans Home and died from COVID-19-associated illness

82.    Nicholas Papandreou is a United States veteran who served proudly in the U.S. Armed Forces from 1953 through 1955, fulfilling his duty to the nation.

83.    On or around January 1, 2017, Nicholas Papandreou was admitted to Long Island State Veterans Home for long-term care.

84.    On or around April 24, 2020, while he was under the care of the Veterans' Home, Nicholas Papandreou contracted and tested positive for COVID-19 at the facility.

85.    On April 27, 2020, Nicholas Papandreou began experiencing severe respiratory problems, and had to be transferred to the intensive care unit of Stony Brook University Hospital, where his health quickly deteriorated.

86.    On May 1, 2020, he was found unresponsive and did not seem to recognize his family members.

87.    Nicholas Papandreou died on May 3, 2020, because of COVID-19 infection.   He was 86 years old.

F.    Louis A. Garofolo, a U.S. veteran who contracted COVID-19 at the Long Island State Veterans Home and died from COVID-19-associated illness

88.    Louis A. Garofolo is a veteran who served proudly in the U.S. Armed Forces, fulfilling his duty to the nation.

89.    On or around February 12, 2019, Louis A. Garofolo was admitted to Long Island State Veterans Home for long-term care.

90.    On or around December 8, 2020, Louis A. Garofolo's family was informed that his roommate had been "really sick" and had to be taken to the hospital.  Later that same day, his daughter, Janine Tortorella, was informed that he tested positive for COVID-19.  Louis A.

Garofolo was tested twice more at the Veterans' Home, coming up positive both times for COVID-19.

91.    Louis A. Garofolo's health quickly deteriorated and he passed away on December 23, 2020, because of COVID-19 infection.  He was 95 years old.

G.    <u>Vincent J. Vallario, a U.S. veteran who contracted COVID-19 at the Long Island State Veterans Home and died from COVID-19-associated illness</u>

92.    Vincent J. Vallario is a veteran who served proudly in the U.S. Armed Forces, fulfilling his duty to the nation.

93.    Mr. Vallario was a resident at Long Island State Veterans Home from on or around September 2019, until on or around January 5, 2021.

94.    On January 4, 2021, his family was alerted that he had tested positive for COVID-19.

95.    On January 5, 2021, he was transferred to Stony Brook University Hospital, where he also contracted an eye infection.

96.    On January 24, 2021, Vincent Vallario died as a result of COVID-19 infection.  He was 83 years old.

97.    Upon information and belief, a large percentage of the veterans/residents at the Veterans' Home unit where Vincent Vallario was housed also died from COVID-19.

H.    <u>Citations and Infection Control Deficiencies at the Veterans' Home of Long Island</u>

98.    Per the New York Department of Health, the Long Island State Veterans Home has reported at least 486 positive COVID-19 cases in their facility among staff and residents, and at least 124 of its veteran/residents had died from COVID-19.

99.    Per the New York Department of Health, the Long Island State Veterans Home was

the subject of 115 complaints and was cited for 19 violations of public and safety health codes between April 2018 and March 2022.

100.  For example, amidst the COVID-19 outbreak, the Long Island State Veterans Home was cited multiple times due to their failure to establish and maintain an infection prevention and control program ("IPCP") designed to provide a safe, sanitary, and comfortable environment and to help prevent the development and transmission of communicable diseases and infections. Specifically, the facility had failed to establish an infection prevention and control program that included, at a minimum, the following elements: (1) a system for preventing, identifying, reporting, investigating, and controlling infections and communicable diseases for all residents, staff, volunteers, visitors, and other individuals providing services under a contractual arrangement based upon the facility assessment and following accepted national standards; (2) written standards, policies, and procedures for the program, which must include, but are not limited to: (1) a system of surveillance designed to identify possible communicable diseases or infections before they can spread to other persons in the facility; (ii) when and to whom possible incidents of communicable disease or infections should be reported; (iii) standard and transmission-based precautions to be followed to prevent spread of infections; (iv) when and how isolation should be used for a resident, including but not limited to: (A) the type and duration of the isolation, depending upon the infectious agent or organism involved, and (B) a requirement that the isolation should be the least restrictive possible for the resident under the circumstances; (v) the circumstances under which the facility must prohibit employees with a communicable disease or infected skin lesions from direct contact with residents or their food, if direct contact will transmit the disease; and (vi) the hand hygiene procedures to be followed by staff involved in direct resident contact; and (4) a system for recording incidents identified under the facility's IPCP and the

corrective actions taken by the facility.

101.   The Long Island State Veterans Home has also been cited for not ensuring that a comprehensive person-centered care plan was developed and implemented for each resident.  Per federal regulations, a nursing home facility must develop and implement a comprehensive person-centered care plan for each resident, consistent with the resident rights set forth at CFR §483.10(c)(2) and §483.10(c)(3), that includes measurable objectives and timeframes to meet a resident's medical, nursing, and mental and psychosocial needs that are identified in the comprehensive assessment.

102.   The Long Island State Veterans Home has also been cited for their failure to ensure their veterans/residents rights to be free from abuse in their facility.  Per federal regulations, all nursing home residents have the right to be free from abuse, neglect, misappropriation of resident property, and exploitation.  This includes but is not limited to freedom from corporal punishment, involuntary seclusion and any physical or chemical restraint not required to treat the resident's medical symptoms.

103.   The Veterans' Home has also been cited due to their failure to properly respond to allegations of abuse, neglect, exploitation, or mistreatment of the veterans residing at their facility.

104.   The Long Island State Veterans Home is currently flagged by Medicare as a nursing home facility recently cited for resident harm, abuse, and neglect.

105.   As defined by Medicare, abuse is the willful infliction of injury, unreasonable confinement, intimidation, or punishment with resulting physical harm, pain, or mental anguish. It includes verbal abuse, sexual abuse, physical abuse, and mental abuse.

106.   In November 2020, due to their egregious and recurrent health violations, the Long Island State Veterans Home was fined $5,000 by Medicare.

107.   Defendants' actions and inactions, including their delayed response to properly monitor staff, students, companions, aides, and visitors to their facility, precipitated one of the worst COVID-19 outbreaks in all the State of New York.

108.   It is utterly shameful how the Defendants, who owed a duty of care to our state's and nation's veterans, dragged their feet and left our vulnerable heroes at the mercy of the deadly virus.

**<u>COUNT I</u>**
**<u>AGAINST ALL DEFENDANTS</u>**
**<u>42 U.S.C. §1983</u>**
**<u>FOURTEENTH AMENDMENDT</u>**
**<u>TO THE UNITED STATES CONSTITUTION</u>**

109.   Plaintiffs hereby incorporates by reference each of the preceding allegations as though set forth herein.

110.   Section 1 of the Fourteenth Amendment to the U.S. Constitution, commonly known as the Due Process Clause, states:

> "All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

111.   For its part, 42 U.S.C §1983 states in pertinent part:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable."

112.    At all times relevant to this complaint, Defendants' actions and omissions were under color of state law.

113.    At all times relevant to this complaint, Defendants, by their officers, agents, servants, independent contractors and/or employees, undertook to provide Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who resided at the Long Island State Veterans Home, with such nursing and rehabilitation services as are customarily provided in a nursing home and rehabilitation facility, as is the Veterans' Home, and agreed to apply all due skill, care and judgment appropriate to the provision of such services through their physicians, nurses, health care personnel, agents, servants, independent contractors and/or employees.

114.    At all times relevant to this complaint, Defendants had a statutorily mandated responsibility to provide Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who resided at the Long Island State Veterans Home, with the rights granted to nursing home residents by federal law, and to provide them with adequate and proper medical and nursing care, as well as a safe environment.

115.    At all times relevant to this complaint, Defendants had the duty to ensure that Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who resided at the Long Island State Veterans Home, received the necessary care and services to attain or maintain the highest practicable physical, mental, and psycho-social well-being.

116.    The Defendants violated the rights of provide Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who resided at the Long Island State Veterans Home, by failing to protect them before, during, and throughout the COVID-

19 outbreak; by failing to provide them with a safe environment; and by failing timely monitor and abide by the relevant health agencies' guidelines and recommendations, among other failures.

117.    The tortious acts and/or omissions committed by the respective officers, employees, agents, independent contractors and/or servants of Defendants were pervasive events that occurred and continued throughout the residency of Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who resided at the Long Island State Veterans Home,  and were such that the supervisors, administrators and managing agents of Defendants should have been aware of them.

118.    The scope and severity of the recurrent statutory violations inflicted upon Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who resided at the Long Island State Veterans Home,  accelerated the deterioration of their mental health and physical condition beyond that caused by the normal aging process, resulting in the physical and emotional trauma described herein, and ultimately resulting in the death of 124 veterans.

119.    More specifically, the agonizing pain, suffering and death of the named Plaintiffs and all similarly situated veterans was precipitated by each Defendant's failure to adhere to the duties set forth herein.

120.    The Defendants' actions and omissions were a substantial departure from accepted professional standards for the provision of medical and nursing care.

121.    At all times relevant to this complaint, Defendants, through their respective officers, employees, agents, representatives, servants, and independent contractors, acted in so careless a manner as to show complete disregard for the rights and safety of Nicholas Papandreou,

Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who resided at the Long Island State Veterans Home.

122.    At all times relevant to this complaint, the Defendants' actions and omissions were in total disregard of the well-being of their veterans/residents, thereby constituting gross negligence and/or thereby constituting willful and wanton acts.

123.    At all times relevant to this complaint, the Defendants were negligent in the operation of the Long Island State Veterans and incurred in violations of 42 U.S.C. Section 1395(i) et seq., Public Health Law Section 1396(r) (1990) et seq. as amended by the Omnibus Budget Reconciliation Act of 1987 (OBRA Regulations), 42 C.F.R. §483 of the OBRA regulations, and other Federal rules, regulations, and statues.

124.    Accordingly, the herein Plaintiffs bring forth the present claims on behalf of themselves and all other similarly situated veterans who either died from, or were infected with, COVID-19 while residing at the Long Island State Veterans Home owned and operated by Defendants.

## COUNT II
## STATE LAW CLAIM
## PURSUANT TO NEW YORK PUBLIC HEALTH LAW
## 2801-d and 2803-c

125.    Plaintiffs hereby incorporates by reference each of the preceding allegations as though set forth herein.

126.    At all times relevant to this complaint, Defendants were always operating a nursing home in the State of New York within the meaning of Article 28 of the Public Health Law and were under a duty to comply with all duties set forth in that chapter.

127.    At all times relevant to this complaint, nursing homes in the State of New York, including the Long Island State Veterans Home, must comply with all pertinent State and local

laws, regulations, codes, standards, and principals, pursuant to the New York Code, Rules and Regulations (NYCRR), 10 NYCRR 415.1 (b)(4).

128.   At all times relevant to this complaint, nursing homes in the State of New York are required to provide care and services in a manner and quality consistent with generally accepted standards of practice, pursuant to 10 NYCRR 415.1(b)(1).

129.   At all times relevant to this complaint, Defendants had a statutorily mandated responsibility to provide Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, with the rights granted to nursing home residents by New York Public Health Law Section 2801-d.

130.   At all times relevant to this complaint, Defendants had a statutorily mandated responsibility to provide Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, with the rights granted to nursing home residents by New York Public Health Law Section 2803-c.

131.   At all times relevant to this complaint, Defendants, by their respective officers, employees, agents and/or servants, violated New York Public Health Law §2801-d.

132.   At all times relevant to this complaint, Defendants failed to provide Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, with appropriate ordinary care.

133.   At all times relevant to this complaint, Defendants provided to Nicholas Papandreou,

Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, care below acceptable standards.

134.   At all times relevant to this complaint, Defendants, through their employees, agents, consultants, and independent contractors, deprived Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, of their rights pursuant to Public Health Law Section 2801-d.

135.   At all times relevant to this complaint, Defendants also deprived Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, of their rights pursuant to Public Health Law Section 2803-c.

136.   The aforesaid violations by the Defendants were a proximate cause of the injuries, conscious pain, suffering, and ultimately the deaths of Nicholas Papandreou, Louis A. Garofolo, Vincent J. Vallario, and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home.

137.   By reason of the foregoing, the named Plaintiffs and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, suffered damages.

138.   In addition to the damages suffered by Plaintiffs and all other similarly situated veterans who either died or were infected with COVID-19 while residing at the Long Island State Veterans Home, as a result of Defendant's deprivation of their rights, they are also entitled to

recover attorneys' fees pursuant to Public Health Law Section 2801-d(6), punitive damages pursuant to Public Health Law Section 2801-d(2), and costs.

### COUNT III
### NEGLIGENCE
### AGAINST ALL DEFENDANTS

139.   Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

140.   Prior to and at all times hereinafter mentioned, Defendants owed a duty to Plaintiffs and the members of the Class to keep them safe from outside diseases and/or outbreaks of viruses.

141.   Prior to and at all times hereinafter mentioned, Defendants breached their duty to Plaintiffs and the members of the Class by failing to adhere by and/or employ effective guidelines and infection control policies and protocols, and by failing to ensure the safety of its veteran/residents and their staff in order to prevent the uncontrollable spread of the COVID-19 virus therein.

142.   Prior to and at all times hereinafter mentioned, Defendants breached their duty to Plaintiffs and the members of the Class by failing to effectively monitor and screen their staff and employees for COVID-19 symptoms, by failing to monitor the residents-visitors' and employees-residents' interactions, by failing to properly monitor food preparation, by failing to properly clean and disinfect all areas of their facility, among other failures, in order to help prevent the uncontrollable spread of the COVID-19 virus therein.

143.   Prior to and at all times hereinafter mentioned, Defendants, any and/or all of them, as well as their officers, principals, employees, agents, supervisors, staff, independent medical personnel, and independent contractors, both licensed and unlicensed, had a duty to provide

ordinary care and exercise the degree of care and skill exercised by a nursing home in the community, consistent with the expertise which defendants publicized to the community.

144.   Prior to and at all times hereinafter mentioned, Defendants owed a duty to Plaintiffs and the members of the Class to hire, train, and supervise employees and independent contractors, both licensed and unlicensed, so that such employees and independent contractors delivered care and services to the veterans/residents in a reasonably safe and beneficial manner.

145.   Prior to and at all times hereinafter mentioned, Defendants owed a duty to Plaintiffs and the members of the Class to have adequate staffing so that such the facility, through its staff, employees and independent contractors, delivered care and services to the veterans/residents in a reasonably safe and beneficial manner.

146.   Prior to and at all times hereinafter mentioned, Defendants had a statutory obligation to protect their nursing home's veterans/resident's rights and to provide reasonable care under the circumstances, as set forth in Public Health Law Section 2801-d, Public Health Law Section 2803-c and pursuant to common law.

147.   Prior to and at all times hereinafter mentioned, Defendants breached their duty to exercise and provide ordinary care, and in doing so, broke the trust that these honorable veterans and their families had placed in them.

148.   At the aforementioned times and location, Defendants provided Plaintiffs and the members of the Class with care below acceptable standards.

149.   Prior to and at all times hereinafter mentioned, Defendants negligently breached their duties owed to Plaintiffs and the members of the Class, as set by statutes and common law.

150.   Prior to and at all times hereinafter mentioned, as a result of the foregoing acts and/or

omissions, the named Plaintiffs and the members of the Class were subjected to Defendants' negligence, causing them to be forced to undergo medical treatment, disability, pain and suffering, mental anguish, loss of enjoyment of life, and mental and physical deterioration resulting in injury and/or death.

151.    Prior to and at all times hereinafter mentioned, the injuries and/or death suffered by Plaintiffs and the members of the Class were caused wholly and solely by the negligent acts and/or omissions of the Defendants.

152.    As a result of the foregoing,  the named Plaintiffs and the members of the Class were unnecessarily exposed to a COVID-19 outbreak at their facility, which caused them to  contract the deadly virus, resulting in loss, injury, and/or death, for which they are entitled to damages.

### COUNT IV
### FOR CONSCIOUS PAIN AND SUFFERING
### AGAINST ALL DEFENDANTS

153.    Plaintiffs hereby incorporate by reference each of the preceding allegations as though fully set forth herein.

154.    By reason of the foregoing, the named Plaintiffs and the members of the Class sustained severe and multiple injuries in, to, and about their bodies, resulting in injury and/or death.

155.    By reason of the foregoing, the named Plaintiffs and the members of the Class lived and suffered excruciating pain and agony, including fear of imminent death.

### COUNT IV
### FOR WRONGFUL DEATH
### AGAINST ALL DEFENDANTS

156.    Plaintiff hereby incorporates by reference each of the preceding allegations as though set forth herein.

157.    Defendants owed a duty to the named Plaintiffs and the members of the Class to keep them safe from outside diseases and/or outbreaks of the virus.

158.    Defendants breached their duty and failed to take the proper steps to protect the veterans/residents at their facility from the COVID-19 virus.

159.    By reason of the foregoing, the named Plaintiffs and the members of the Class sustained severe bodily injuries resulting in wrongful death.

160.    By reason of the foregoing, the named Plaintiffs and the members of the Class who died from COVID-19 left surviving next of kin and distributees.

161.    As a result of the foregoing, the surviving next of kin and distributees of the named Plaintiffs and the members of the Class, became liable for, and expended money for, funeral and other expenses.

162.    That by reason of the foregoing, their next of kin suffered extensive pecuniary losses and also incurred and paid out necessary medical, hospital, funeral, and concomitant expenses..

163.    As a result of the foregoing, these surviving next of kin and distributees sustained all other damages allowed by law.

## COUNT V
## FOR GROSS NEGLIGENCE
## AGAINST ALL DEFENDANTS

164.    Plaintiff hereby incorporates by reference each of the preceding allegations as though set forth herein.

165.    Prior to and at all times hereinafter mentioned, the Defendants acted in so careless a manner as to show complete disregard for the rights and safety of the veterans/residents at Long Island State Veterans Home.

166.    Prior to and at all times hereinafter mentioned, the Defendants acted, and/or failed to act, knowing that their conduct would probably result in injury or damage, including knowing that their conduct would probably result in injury or damage, including death, to the veterans/residents at Long Island State Veterans Home.

167.    Prior to and at all times hereinafter mentioned, the Defendants acted in so reckless a manner, or failed to act in circumstances where an act was clearly required, so as to indicate disregard of the consequences of their actions or inactions.

168.    Prior to and at all times hereinafter mentioned, the Defendants' conduct, as outlined hereinabove, was in reckless disregard.

169.    Prior to and at all times hereinafter mentioned, the Defendants' conduct, as outlined hereinabove, was willful.

170.    Prior to and at all times hereinafter mentioned, the actions of the Defendants were in total disregard of the well-being of the veteran/residents at the Long Island State Veterans Home, thereby constituting gross negligence, and/or thereby constituting willful and wanton acts.

171.    As a result of the foregoing, Plaintiffs are entitled to punitive damages pursuant to Public Health Law Section 2801-d(2).

WHEREFORE, Plaintiffs, on behalf of themselves and other similarly situated veterans and/or their respective estates, respectfully requests that the Honorable Court:

1.  Certify this matter as a class action pursuant to Fed.R.Civ.P. 23;

2.  Award the Plaintiffs and class members damages to the fullest extent available under the law;

3.  Award the Plaintiffs and class members punitive damages;

4.  Award the Plaintiffs and class members attorney's fees, interests, costs, and disbursements; and,

5. Award the Plaintiffs and class members such other relief as this Court may deem just and proper.

Dated: Melville, New York
      May 20, 2022

                                 Respectfully submitted,

                                 **NAPOLI SHKOLNIK, PLLC**
                                 *Attorneys for Plaintiff*

                                 */s/ Joseph Ciaccio*
                                 Joseph Ciaccio
                                 Bar No. JC6856
                                 400 Broadhollow Rd, Suite 305
                                 Melville, New York, 11747
                                 T: 212-397-1000